# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DAVID MEYERS,** | )<br>) |
| Plaintiff, | ) Case No. 7:18CV00371<br>) |
| v. | ) **OPINION**<br>) |
| **HAROLD CLARKE, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*David Meyers, Pro Se Plaintiff.*

The plaintiff, David Meyers, a Virginia inmate proceeding pro se, has filed a action against state and federal officials raising, among other things, claims about events at Red Onion State Prison ("Red Onion") in July of 2018. After review of the record, I conclude that this action must be summarily dismissed as duplicative of claims he has asserted in an earlier action in this court, Case No. 7:18CV00029, or for failure to exhaust administrative remedies. I will also dismiss Meyers' motion seeking interlocutory injunctive relief as moot.

I.

Meyers asserts the following allegations, which I accept only for the purposes of my present adjudication.

Meyers claims that on July 11, 2018, the commissary manager sent Meyers "stale, molded, expired honey buns so [he] would eat them get sick and die." Compl. 15, ECF No. 1. When Meyers ordered officers to get his money back for the buns, the booth officer opened the cell door purposely so that it crushed the rest of Meyers' commissary order.

He further claims that on July 19, 2018, correctional officers ordered Meyers to walk to the "Anal Xray Scan Machine" despite his disabilities and "wheelchair pass." *Id.* at 7. Officer Duncan, in retaliation for a complaint Meyers had previously filed about him, said that if the medical department did not confirm Meyers' inability to stand and walk, Duncan would place him in a suicide cell. When Duncan returned, he ordered Meyers again to walk over and climb onto the scan machine. Meyers said he could not do so. Duncan and another officer took Meyers in his wheelchair to a different housing area, while Meyers warned Duncan he would file another complaint. Duncan threatened to charge Meyers for making threats. Duncan also used profanity, said he was going to kill Meyers when they got to his new "D3-301 cell," and threatened to sexually assault the inmate. *Id.* at 10.

At the new cell, Lieutenant Messer ordered Meyers to get from his wheel chair onto the scan machine. Two officers tried to assist him, but Meyers told them to stop, his legs gave out, and he fell on his knees. The officers dragged him

to the scan machine and up its steps, pulling his boxer shorts down in the process, baring his buttocks. Meyers "felt a prison guards thumbs on the sides of [his] buttocks and then the officer thrusted [Meyers] up into the seat outer rim of the anal scan machine in which they fractured [his] ribs with the force they used." *Id.* at 12. The officers also pulled him by his shoulders, causing injury. Meyers began having chest pains. At Messer's order, the officers lifted Meyers and "hurled [him] backwards" onto the machine, and when the scan was completed, lifted him and "hurled [him] backwards into [his] wheelchair." *Id.* at 13. Meyers told the officers that he was in pain and needed medical staff to assess him, but the officers put him back in his cell instead.

A nurse distributing pills later that evening refused Meyers' request for an assessment of his injuries. When officers took him to the counselor's office for a disciplinary hearing that night, they also refused his requests for medical attention.

On July 20, 2018, during another disciplinary hearing with officers Stallard and Counts, Meyers described the problems with the scan machine and asked for medical care. The officers refused to call the medical unit.

II.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), mandates that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies at the prison. *See Ross v. Blake*, 136

S. Ct. 1850, 1856 (2016). Failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar an inmate's action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Operating Procedure 866.1 is the multi-step, administrative remedies procedure that inmates in the Virginia Department of Corrections ("VDOC") must follow to comply with § 1997e(a).[1] An inmate must first attempt to resolve his issues informally by completing an informal complaint form to which staff must respond within fifteen days. If unsatisfied with the response, the inmate can file a regular grievance on the matter to the warden's office (Level I) within thirty days after the event of which he complains. If dissatisfied at Level I, the inmate can appeal for a Level II response, and in some instances, a Level III response, depending on the issue.

Meyers' Complaint is dated July 20, 2018, the same day or within nine days of the events about which he complains. Thus, it is clear from his allegations that he did not even attempt to exhaust available administrative remedies before filing

---

[1] I take judicial notice of VDOC operating procedures.

this court action. He offers no viable excuse for failing to do so. Therefore, he has not complied with 42 U.S.C. § 1997e(a), and accordingly, I will dismiss the Complaint without prejudice and close the case.[2]

A separate Final Order will be entered herewith.

DATED: August 8, 2018

/s/ James P. Jones
United States District Judge

---

[2] I also note that Meyers' Complaint does not comport with the Federal Rules of Civil Procedure, as it purports to join multiple, unrelated claims against dozens of defendants. *See* Fed. R. Civ. P. 8, 10, 18, and 20.